UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA

S2 04 Cr. 1002 (CLB)

*Memorandum and Order*

- against -

RICHARD JOSEPHBERG,

                       Defendant.
------------------------------------------------------------x
Brieant, J**.**

      By motion filed on November 19, 2004 (Doc. #7), heard and fully submitted on July 14, 2005, Defendant Richard Josephberg moves under the Fifth Amendment to the United States Constitution, and Fed. R. Crim. P. 7(d), 8(a), 12(a), and 16(a)(1) to dismiss Counts 7 and 8 of the Indictment, to strike surplusage and multiplicity, and to compel discovery. Opposition papers were filed on April 5, 2005 and June 10, 2005.

      The Second Superseding Indictment was returned by a Grand Jury sitting in this District on March 15, 2005, and charges the Defendant with seventeen Counts. Count 1 charges evasion of payment of income taxes in violation of 26 U.S.C. § 7201, and alleges that between 1995 and 1999, the Defendant, an investment banker, concealed and attempted to conceal substantial income and assets to avoid paying taxes due and owing for improper partnership losses claimed between 1977 and 1985, allegedly by directing income and assets to be paid into nominee bank accounts, directing personal income to be paid to his company, J.G. Capital ("J.G."), which thereafter used that income to pay Defendant's personal expenses, submitting false information to the IRS to conceal income and assets, and filing bankruptcy petitions for his wife and himself.

Count 2 charges conspiracy to violate 26 U.S.C. §§ 7201 and 7206 and 18 U.S.C. § 1347. Defendant conspired allegedly to evade the assessment of income tax by including improper Net Operating Losses ("NOL") on individual United States Tax Returns, Form 1040, for tax years 1994 through 1998. Count 2 charges further that Defendant defrauded Oxford Health Plan ("OHP") of its money or property by filing fraudulent documents with OHP indicating that Defendant's wife was an employee of J.G, thus enabling her to receive health insurance coverage under J.G.'s health insurance policy. In 1998, OHP requested documentary proof that Defendant's wife was employed by J.G. Defendant allegedly sent OHP two fraudulent Schedule C documents indicating a business deduction for his wife's employment, and a fraudulent New York State employer tax form.

Counts 3 and 4 charge the Defendant with tax evasion in violation of 26 U.S.C. § 7201 for tax years 1997 and 1998. This is a so-called "nanny tax" claim, and the Government alleges that the Defendant employed a domestic employee, paid her in cash but failed to remit FICA and Medicare taxes to the IRS.

Counts 5 and 6 charge the Defendant with subscribing to false individual income tax returns in violation of 26 U.S.C. § 7206 for tax years 1997 and 1998. Counts 7 through 10 charge the Defendant with failing to file individual income tax returns for tax years 1999 through 2002 in violation of 26 U.S.C. § 7203. Counts 11 through 15 charge the Defendant with failing to pay taxes for tax years 1999 through 2003 in violation of 26 U.S.C. § 7203. Count 16 charges the Defendant with obstructing the administration of Internal Revenue laws in violation of 26

U.S.C. § 7212. Finally, Count 17 charges the Defendant with Health Care fraud in violation of 18 U.S.C. §§ 1347 and 2.

Defendant argues first that Counts 7 and 8 must be dismissed because the Fifth Amendment's privilege against self-incrimination protects his failure to file tax returns.[1] He argues that in light of the ongoing investigation into his tax history, any information submitted on a tax return to the IRS may have been incriminating. At oral argument, Defendant described this alleged Hobson's choice as follows:

> For instance, the best example is the "net operating loss carry-forward" deductions. The thrust of the investigation and a major thrust of the indictment is that the NOL carry-forwards were false. We believe that they are not false. We believe they are correct. If Mr. Josephberg had not claimed - - if he had claimed those carry forwards in the subsequent years, that's two more counts of tax evasion; if he does not claim them, they offer the subsequent years as admissions to prove that they were false in the preceding years. So he's between a rock and a hard place there. Either thing he does is incrimination. *See Tr. at 4-5*.

This argument lacks merit. While a taxpayer may claim a line-item privilege as to information such as the source of income, the United States Supreme Court decided nearly 80 years ago that the Fifth Amendment does not protect a refusal to file a tax return. *See United States v. Sullivan*, 274 U.S. 259, 263-64 (1927). This holding remains valid and is binding upon this Court. *See Garner v. United States,* 424 U.S. 648, 650 (1976) ("the privilege against compulsory self-incrimination is not a defense to prosecution for failing to file a return at all.")

Defendant's reliance on *United States v. Romano*, 938 F.3d 1569 (2nd Cir. 1991) is

---

[1] In light of the Counts contained in the Second Superseding Indictment, this argument applies with equal force to Counts 9 and 10.

misplaced. In *Romano*, the Defendant was charged with willful tax evasion. One element of this crime is an affirmative act with the intent to evade or defeat a tax. Our Court of Appeals held that the mere failure to file a tax return does not satisfy this element because a taxpayer "cannot be convicted of tax evasion merely on a willful omission." *Id. at 1573*. In this prosecution, Counts 7-10 charge the Defendant with failing to file tax returns, not tax evasion, and as our Court of Appeals stated clearly in *Romano,* "Romano was, of course, required to file a tax return, and his failure to do so might have been a basis for the lesser criminal charge of failure to file, *see* 26 U.S.C. § 7203, one of the charges that was dropped." Accordingly, Defendant's failure to file tax returns is not protected by the Fifth Amendment.

Defendant argues further that his failure to file, as a matter of law, cannot be considered willful because he believed it was protected by the Fifth Amendment. Willfulness requires the Government to prove that the law imposed a duty upon the Defendant, that the Defendant was aware of this duty, and that he violated this duty voluntarily and intentionally. *See Cheek v. United States,* 498 U.S. 192, 202 (1991). The Government concedes, as it must, that it bears the burden of negating Defendant's claim that he acted in good faith. Whether to credit Defendant's claim of good faith is properly the trial jury's function, and does not affect the sufficiency of the Indictment.

At oral argument, Defendant argued that "there is no case like this [case]. This is the first time in about 70 or 80 years of criminal tax enforcement that the government has chosen to seek an indictment with willful failure to file tax returns that became due during the time of a known

ongoing criminal tax investigation into the immediately preceding years." *Tr. at 2-3*. That this prosecution is novel, a fact apparently conceded by the Government, is irrelevant. *See United States v. Kinzler*, 55 F.3d 70, 74 (2nd Cir. 1995) ("the claimed novelty of this prosecution does not help [Defendant's] cause. . . ."); *United States v. Brown*, 555 F.2d 336, 339-40 (2nd Cir. 1977) ("The fact that there is no litigated fact pattern precisely on point may constitute a tribute to the cupidity and ingenuity of the malefactors involved but hardly provides an escape from the penal sanctions. . .").

Apparently, this is not the first prosecution for failure to file brought against an individual who failed to file tax returns while being investigated for tax crimes. In *United States v. Poschwatta*, 829 F.2d 1477 (9th Cir. 1987), "defendant consulted with attorneys concerning whether he should file returns if he was under criminal investigation." Defendant failed to file, and was "charged. . .with willfully failing to file federal income tax returns. . . ." Even if Mr. Josephberg's prosecution had been original in nature, it was authorized by the IRS, and some degree of deference is owed to the IRS's interpretation of the internal revenue laws, so long as that interpretation is reasonable, as it was here.

Defendant moves to strike surplusage from the Indictment. A motion to strike surplusage from an Indictment is granted only when the challenged language is not relevant to the crime charged and is inflammatory and prejudicial. *See United States v. Mulder*, 273 F.3d 91, 99-100 (2nd Cir. 2001). Evidence that is admissible and relevant to the charge may not be stricken, no matter how prejudicial it may be. *See United States v. Scarpa*, 913 F.2d 993, 1013 (2nd Cir.

1990). Defendant claims that the allegations contained within ¶¶ 10(a) through 10(g) are improper surplusage because the events alleged occurred outside the relevant six year statute of limitations. These paragraphs are contained within Count 1, which charges evasion of payment of income taxes, and they list the various occasions on which the Defendant allegedly concealed income and assets by directing that shares of stock be issued in the name of his family members as well as others. These events occurred between September 1995 and May 1998.

Defendant's argument fails because timely acts of evasion are alleged within the Indictment, and a prosecution under 26 U.S.C. § 7201 is timely if commenced within six years of any act in furtherance of the crime. *See United States v. DiPetto*, 936 F.2d 96, 98 (2nd Cir. 1991). The Indictment charges that the Defendant incurred tax liability for tax years 1977 to 1980, and 1983 to 1985. It alleges further that between 1995 and 1999 he evaded the assessment of taxes to avoid paying taxes due and owing. The statute of limitations therefore began to run when the final evasive act was committed, and the allegations contained within 10(a) to 10(g) are not surplusage.

As part of its conspiracy count, the Government alleges that the Defendant schemed to defraud Oxford Health Plans by representing falsely that Defendant's wife was an employee of J.G., and thus could be included on J.G.'s health insurance policy. Based upon these alleged misrepresentations, Oxford provided health insurance coverage to Defendant's wife and their children. Thereafter, Oxford requested documentary proof that Defendant's wife was a legitimate employee of J.G.. The Government claims that the Defendant requested that his

accountant prepare fraudulent documents indicating that his wife was an employee. This was done, and the documents allegedly were sent to Oxford. Oxford continued the health insurance, but at a lower rate than it would have charged for personal health care.

26 U.S.C. § 1347 criminalizes "knowingly and willfully execut[ing], or attempt[ing] to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment of health care benefits, items or services. . . ." An Indictment need only track the statute, and may not be challenged for evidentiary sufficiency. This Indictment clearly satisfies this standard.

The Defendant argued that "there is no allegation that Oxford Health Plans was deprived of money or property. All the government says in its brief in response to what we said. . .is that they [OHP] would not have extended the coverage." After the Court stated that the apparent purpose of the scheme was to obtain cheaper insurance, Defendant replied, "That could be, but I don't see it in the count." Count 17 is the substantive crime of health care fraud described within the conspiracy count, Count 2. When these two counts are read together, the alleged object of Defendant's scheme becomes apparent. In ¶ 33, the Government alleges that

> as a result of that false representation, OHP provided health insurance coverage to the [sic] Richard Josephberg, his wife, and their children under the JG&Co. insurance policy, which health insurance coverage would have been more expensive had Richard Josephberg and his wife purchased that coverage under a non-business plan, or had Richard Josephberg's wife purchased that coverage in her individual capacity.

Obtaining insurance at a lower premium, and thereby depriving OHP of money, was an alleged aim of the conspiracy, and a substantive crime of fraud.

Defendant argues next that the health care fraud and nanny-tax fraud Counts are misjoined with the tax fraud Counts. Two separate offenses may be joined properly under Rule 8(a) if (1) they are based on the same act or transaction; (2) they are based on two or more acts or transactions constituting parts of a common scheme or plan; or (3) they are of the same or similar character. *See Fed. R. Crim. P. 8(a)*; *United States v. Halper*, 590 F.2d 422, 428 (2nd Cir. 1978). Rule 8(a) permits joinder of offenses that are "resembling in many respects; somewhat alike; having a general likeness." *See United States v. Werner*, 620 F.2d 922, 926 (2nd Cir. 1980). Joinder is also proper when the same evidence will support both of the joined Counts. *See United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999). Rule 8(a) recognizes a legislative policy decision that considerations of speed and judicial economy may outweigh the potential unfairness that accrues to the accused. *See United States v. Amato*, 15 F.3d 230, 237 (2nd Cir. 1994).

The Government argues that the health care and nanny-tax fraud Counts are of the same or similar character, and are part of a common scheme or plan, as the tax fraud Counts. While these Counts are not part of a common scheme or plan within the plain meaning of the words used, our Court of Appeals has held that counts which "all involved substantial alleged dishonesty, surely [are] 'of the same or similar character.'"*United States v. Ruiz*, 894 F.2d 501, 505 (2nd Cir. 1990). In *Werner*, our Court of Appeals stated that courts should not require too

precise an identity between the character of the offenses, because to do so would fail to give effect to the word "similar" following the word "same." *See Werner*, *620 F.2d at 926*. The tax, health-care and nanny tax counts involve the same actors committing dishonest acts to receive some monetary benefit. The Court should not require an identical nature between these crimes, which all involved substantial dishonesty and occurred during the same time period. The underlying evidence will be admissible to support all claims, subject to objections under Fed. R. Evid. 403. *See United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991). If Defendant is convicted, all the Counts will be used to calculate his total offense behavior. Juries are capable of considering each individual count on its own merit, and jury instructions and special jury interrogatories are sufficient to ensure that the Defendant is not prejudiced unduly by the presented evidence.

Defendant argues next that Count 16 is multiplicitous in violation of the Double Jeopardy clause. Count 16 charges the Defendant with obstructing the administration of the internal revenue laws by committing the substantive offenses contained within Counts 1-4 and 7-10. No independent factual allegations form the basis for this Count.

In the absence of Congressional intent to the contrary, two separate counts are not multiplicitous if each requires proof of a fact which the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof

of a fact which the other does not."). That the same conduct forms the basis for separate counts is not controlling. *See United States v. Chacko*, 169 F.3d 140, 146 (2nd Cir. 1999) ("It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' - - in the legal sense, as defined by Congress - - complained of in one event is the same as that charged in another."); *at 148:*

> Section 1344 requires a "scheme or artifice," while § 1014 does not. Section 1014 requires a false statement be made to obtain a loan or advance, while § 1344 has no such requirement. The Blockberger test - - that each charged offense contain one element that the other does not - - is thus met here.

Section 7212 criminalizes any conduct by which a Defendant:

corruptly or by threat of force. . .endeavor[ed] to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any way corruptly or by threat of force. . .obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title. . . .

Our Court of Appeals has stated that a defendant "need not resort to force or the threat of force in order to be convicted of obstruction." *See United States v. Kelly*, 147 F.3d 172, 175 (2nd Cir. 1998).[2] Rather, this section criminalizes "any other action which serves to obstruct or impede the due administration of the revenue laws." Our Court of Appeals specifically rejected the argument that § 7212 proscribes only threatening or harassing conduct. Although our Court of Appeals refused to read a willfulness requirement into this statute, it approved a jury instruction definition of "corruptly" that is "as comprehensive and accurate as if the word 'willfully' was incorporated into the statute." *See Kelly, 147 F.3d at 177.*

---

[2]No allegation of threats or force is contained within the Indictment.

Tax evasion under § 7201 requires willful conduct. A finding of willfulness would suffice to find corruption under § 7212. Under the standard established by our Court of Appeals in *Kelly*, proof that the Defendant violated § 7201 could establish a violation of § 7212. Because the Government presents no additional factual element to support its obstruction charge, convicting the Defendant of any count within Counts 1-4 or 7-10 would permit a conviction on Count 16 without proving any additional facts. This violates *Blockburger*. Accordingly, Count 16 is multiplicitous in violation of the Double Jeopardy clause and is hereby dismissed.

Finally, Defendant raises several discovery claims. In light of the Government's representations that additional discovery has been provided, and that this issue can be resolved without court intervention, the Court need not consider this issue. Defendant may renew his discovery claims if the Government's discovery production does not satisfy his requests.

## Conclusion

Motion granted as to Defendant's request to dismiss Count 16. In all other respects, the motion is denied. The Defendant shall appear for jury selection on Monday, September 12, 2005 at 9 A.M. Defendant's final day to accept responsibility is Monday, August 29, 2005.

X

X

X

SO ORDERED.

Dated: White Plains, New York
      August 15, 2005

                                                      *Charles L. Brieant*
                                          Charles L. Brieant, U.S.D.J.